Katherine Christensen
Real Party in Interest Under Injury
1134 West Grand Caymen Drive
Gilbert, Arizona 85233
(480) 813-3885
Pro Se

FILED
2009 DEC 31 AM 9: 08
U.S. BANKRUPTCY
DISTRICT OF ARIZONA
CLERK

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: ) | CASE NO. 09-21818-RTB |
| ) | Adversarial Proceeding No. 09-ap-01358-RTB |
| KATHERINE CHRISTENSEN ) | |
| Plaintiff ) | MOTION TO EXTEND |
| V. ) | AUTOMATIC STAY PENDING |
| ) | OUTCOME OF ADVERSARIAL |
| AURORA LOAN SERVICES LLC ) | COMPLAINT |
| Its assignees and/or successors ) | |
| Defendant ) | |
| _____ ) | Assigned to: Hon. Redfield T. Baum |

Plaintifff KATHERINE CHRISTENSEN, respectfully submits this MOTION TO

EXTEND AUTOMATIC STAY PENDING OUTCOME OF ADVERSARIAL PROCEEDING.

Plaintiff now has in her possession unrefuted proof that Defendants have committed fraud,

including but not limited to securities fraud, mortgage fraud and mail fraud, conversion, civil

theft and have violated numerous other state and federal statutes to unjustly enrich themselves as

they disregarded lawful evidence and knowingly, with intention to deceive, improperly and

without standing wrongfully commenced foreclosure proceedings on Plaintiff's residence.

Defendants are attempting to obtain putative legal title to Plaintiff's Property without

having established that any of them was ever a "person entitled to enforce" the security interest

under the Note and the Deed of Trust. No legal transfer of the Mortgage Note, Deed of Trust or

1  any other interest in Plaintiff's Property was ever effected that gave any of the Defendants the

2  right to be named a trustee, mortgagee, beneficiary or an authorized agent of trustee, mortgagee

3  or beneficiary of Plaintiff's Mortgage Note, Deed of Trust or any other interest in Plaintiff's

4  Property.

5  Fraud vitiates contracts ab initio. Once Plaintiff proves to this Court that Defendants acted

6  fraudulently, everything they did and are attempting to do is void and must be struck. Plaintiff

7  simply asks that she be protected under the protection of this honorable court until the outcome

8  of the adversarial hearing while seeking honesty, fairness and justice. The Court deserves to and

9  needs to hear the evidence.

10  Courts across this country are now waking up to the shocking dishonesty perpetrated on

11  homeowners and are granting homeowners their day in court to present the facts. Courts across

12  the country are ruling in favor of homeowners as they learn of the egregious and fraudulent

13  manner that financial institutions have operated in the last few years.

14  For example, in a recent article in The National Law Journal, Brooklyn Supreme Court

15  Justice, the Honorable Arthur M. Schack, in connection with his approach to the apparent sloppy

16  paperwork being filed by foreclosing lenders and their attorneys was quoted as follows:

17  *"I deny more foreclosures than I approve, "[...]". "I want to see the servicing agent's power*

18  *of attorney, I want to see all the paperwork before I approve it. If the paperwork is garbage, I*

19  *deny it. If you're going to take away someone's home, it should be done properly."* Judge

20  Schack has tossed more than 32 cases so far, and that is undoubedly the tip of an iceberg.

21  Federal Courts in Ohio have routinely been dismissing suits by Deutsche Bank for

22  failing to prove standing and ownership of the mortgage (Order of Judge Christopher S. Boyko

23  attached hereto).

1  Supreme Courts in New York have been dismissing suits by Aurora Loan Services for
2  failure to prove standing and ownership of the mortgage (Order of Judge Joseph Farneti
3  attached hereto).

4  The Bankruptcy Courts have been dismissing suits by MERS for their failure to prove
5  standing and ownership of the note. For example in Nevada Judge Riegle stated, *"While
6  MERS may have standing to prosecute the motion in the name of its Member as a nominee,
7  there is no evidence that the named nominee is entitled to enforce the note or that MERS is the
8  agent of the note's holder. Indeed, the evidence is to the contrary, the note has been sold, and
9  the named nominee no longer has any interest in the note."* (Order of Honorable Linda B.
10 Riegle attached hereto).

11 The Bankruptcy Courts have been amending their opinion denying relief from
12 automatic stay. For example in California *In re: 396 B.R. 757 (Bankr. CD. Cal. 2008)* Judge
13 Bufford quoted, "Judge Learned Hand, perhaps the most distinguished U.S. jurist who never
14 sat on the U.S. Supreme Court. Judge Hand stated: "A judge is more than a moderator, he is
15 charged to see that the law is properly administered, and it is a duty which he cannot discharge
16 by remining inert." *United States V. Marzano, 149 F.2d 923. 925 (2d Cir. 1945).* Judge
17 Bufford concluded, "the court finds upon reconsideration that IndyMac is entitled to enforce
18 the secured note here at issue. Howeer, it must satisfy the procedural requirements of federal
19 law in seeking relief from the automatic stay for this purpose. These requirements include
20 joining the owner of the note on two separate grounds: it is the real party in interest under Rule
21 17, and it is a required party under Rule 19. Because IndyMac has failed and refused to join
22 the owner of the secured note, the motion for relief from stay is denied.

Moreover, the underlying facts pled in a complaint for fraud must be very specific in setting out the elements. General statements will likely result in a motion to dismiss for failure to state the cause of action. The plaintiff must specify the facts that set out each of the essential elements of this cause of action.

However, in this case, there is ample evidence to demonstrate defendants engaged in misrepresentation of material facts underlying fraud; forensic accounting, agreements, law, etc.

Fraud may be called misrepresentation or fraud in the inducement. The elements that must be alleged in the complaint and proven by a greater weight of the evidence are the same, regardless of the name.

Defendants continuously made false statements both verbally and in writing to courts, plaintiff, police officers, in civil proceedings and in false reports for proposed ejecting of plaintiff from her home.

Defendants knew their statements were false at the time they made them.

Defendants willfully and knowingly intended plaintiff to act in reliance on the false statements – res ipsa loquitur.

Defendants made their false statements in "bad faith" or with reckless disregard for consequence of relying on the statement. In this case the premise of res ipsa loquitur applies on the grounds that the evidence is already before this court.

Defendants intentionally omitted material facts for the purpose of misleading Plaintiff. Defendants committed fraud in the factum.

Defendants actually knew of the falsity of its statements. Herein res ipsa loquitur applies. The accounts payable side of the ledger sheet demonstrates that defendants lied and misrepresented material facts that damaged plaintiff.

1    Defendants made their statements in such absolute, unqualified, and positive terms that the

2    Plaintiff had no knowledge of its falsity.

3    Defendants used the United States mail, telephone and internet in furtherance of their

4    pattern of unlawful and illegal conduct to collect on negotiable instruments when they were not

5    entitled to do so exposing them to wire fraud and mail fraud charges.

6    Defendants wrongfully and knowingly and without proper authority, recorded a fraudulent

7    "Trustee's Deed Upon Sale" document in the OFFICIAL RECORDS OF THE MARICOPA

8    COUNTY RECORDER OFFICE with file # 20090427443 on 5/13/09 for the property located at

9    1134 West Grand Caymen Drive.

10    Defendants possessed special knowledge and occupied a special position to impute a

11    knowledge of the fact which Plaintiff relied upon to her detriment.  Defendants are lawyers and

12    bankers acting unethically and unconscionably.

13    ## FRAUD – MISREPRESENTATION AND CONSPIRACY

14    Defendants made certain representations and omissions to Plaintiff, including, but not limited

15    to those set forth more fully above.

16    The representations and omissions above, among others, were false.

17    The representations and omissions above, among others, were material to Plaintiff.

18    Defendants made these and other representations and omissions with knowledge of their

19    falsity.

20    Defendants made these representations and omissions to induce Plaintiff to enter into

21    business with Defendants.

22    Plaintiff was not aware that Defendants' representations and omissions were false.

23    Plaintiff relied on the truth of Defendants' representations and omissions.

1 Plaintiff had no reason to question the truth of Defendants' representations and omissions.

2 Plaintiff has been injured by Defendants' misrepresentations in an amount to be proven at

3 trial.

4 WHEREFORE Plaintiff prays for the following:

5     a. That the court grant this motion that the automatic stay be extended pending the

6 outcome of an evidenciary hearing.

7     b. That the court set a date for an evidenciary hearing

8     c. That the court grant any further relief as if deems just and necessary.

9

10                    DATED:  December 30, 2009

11

12

13                    Katherine Christensen

# EXHIBITS

1. Opinion and Order of Judge Christopher A. Boyko
2. Short Form Order of Judge Joseph Farneti
3. Memorandum Opinion of Judge Linda B. Riegle
4. MERS Relief From Stay Motion:  Findings of Fact and Conclusions of Law by Judge Samuel L. Bufford

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE FORECLOSURE CASES** | ) | **CASE NO. NO.1:07CV2282** |
| | ) | **07CV2532** |
| | ) | **07CV2560** |
| | ) | **07CV2602** |
| | ) | **07CV2631** |
| | ) | **07CV2638** |
| | ) | **07CV2681** |
| | ) | **07CV2695** |
| | ) | **07CV2920** |
| | ) | **07CV2930** |
| | ) | **07CV2949** |
| | ) | **07CV2950** |
| | ) | **07CV3000** |
| | ) | **07CV3029** |
| | ) | |
| | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| | ) | |
| | ) | |
| | ) | **OPINION AND ORDER** |
| | ) | |
| | ) | |

**CHRISTOPHER A. BOYKO, J.:**

On October 10, 2007, this Court issued an Order requiring Plaintiff-Lenders in a
number of pending foreclosure cases to file a copy of the executed Assignment demonstrating
Plaintiff was the holder and owner of the Note and Mortgage *as of the date the **Complaint***
*was filed,* or the Court would enter a dismissal. After considering the submissions, along
with all the documents filed of record, the Court dismisses the captioned cases without
prejudice. The Court has reached today's determination after a thorough review of all the
relevant law and the briefs and arguments recently presented by the parties, including oral

arguments heard on Plaintiff Deutsche Bank's Motion for Reconsideration. The decision, therefore, is applicable from this date forward, and shall not have retroactive effect.

### LAW AND ANALYSIS

A party seeking to bring a case into federal court on grounds of diversity carries the burden of establishing diversity jurisdiction. *Coyne v. American Tobacco Company*, 183 F. 3d 488 (6th Cir. 1999). Further, the plaintiff "bears the burden of demonstrating standing and must plead its components with specificity." *Coyne*, 183 F. 3d at 494; *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982). The minimum constitutional requirements for standing are: proof of injury in fact, causation, and redressability. *Valley Forge*, 454 U.S. at 472. In addition, "the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." *Coyne*, 183 F. 3d at 494 (quoting *Pestrak v. Ohio Elections Comm'n*, 926 F. 2d 573, 576 (6th Cir. 1991)). To satisfy the requirements of Article III of the United States Constitution, the plaintiff must show he has ***personally suffered some actual injury*** as a result of the illegal conduct of the defendant. (Emphasis added). *Coyne*, 183 F. 3d at 494; *Valley Forge*, 454 U.S. at 472.

In each of the above-captioned Complaints, the named Plaintiff alleges it is the holder and owner of the Note and Mortgage. However, the attached Note and Mortgage identify the mortgagee and promisee as the original lending institution — one other than the named Plaintiff. Further, the Preliminary Judicial Report attached as an exhibit to the Complaint makes no reference to the named Plaintiff in the recorded chain of title/interest. The Court's Amended General Order No. 2006-16 requires Plaintiff to submit an affidavit along with the Complaint, which identifies Plaintiff either as the original mortgage holder, or as an assignee,

-2-

trustee or successor-in-interest. Once again, the affidavits submitted in all these cases recite the averment that Plaintiff is the owner of the Note and Mortgage, without any mention of an assignment or trust or successor interest. Consequently, the very filings and submissions of the Plaintiff create a conflict. In every instance, then, Plaintiff has not satisfied its burden of demonstrating standing at the time of the filing of the Complaint.

Understandably, the Court requested clarification by requiring each Plaintiff to submit a copy of the Assignment of the Note and Mortgage, executed as of the date of the Foreclosure Complaint. In the above-captioned cases, *none* of the Assignments show the named Plaintiff to be the owner of the rights, title and interest under the Mortgage at issue as of the date of the Foreclosure Complaint. The Assignments, in every instance, express a present intent to convey all rights, title and interest in the Mortgage and the accompanying Note to the Plaintiff named in the caption of the Foreclosure Complaint upon receipt of sufficient consideration on the date the Assignment was signed and notarized. Further, the Assignment documents are all prepared by counsel for the named Plaintiffs. These proffered documents belie Plaintiffs' assertion they own the Note and Mortgage by means of a purchase which pre-dated the Complaint by days, months or years.

Plaintiff-Lenders shall take note, furthermore, that prior to the issuance of its October 10, 2007 Order, the Court considered the principles of "real party in interest," and examined Fed. R. Civ. P. 17 — "Parties Plaintiff and Defendant; Capacity" and its associated Commentary. The Rule is not *apropos* to the situation raised by these Foreclosure Complaints. The Rule's Commentary offers this explanation: "The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the

-3-

proper party to sue is difficult or when an understandable mistake has been made. ... It is, in cases of this sort, intended to insure against forfeiture and injustice ..." Plaintiff-Lenders do not allege mistake or that a party cannot be identified. Nor will Plaintiff-Lenders suffer forfeiture or injustice by the dismissal of these defective complaints otherwise than on the merits.

Moreover, this Court is obligated to carefully scrutinize all filings and pleadings in foreclosure actions, since the unique nature of real property requires contracts and transactions concerning real property to be in writing. R.C. § 1335.04. Ohio law holds that when a mortgage is assigned, moreover, the assignment is subject to the recording requirements of R.C. § 5301.25. *Creager v. Anderson* (1934), 16 Ohio Law Abs. 400 (interpreting the former statute, G.C. § 8543). "Thus, with regards to real property, before an entity assigned an interest in that property would be entitled to receive a distribution from the sale of the property, their interest therein must have been recorded in accordance with Ohio law." *In re Ochmanek*, 266 B.R. 114, 120 (Bkrtcy.N.D. Ohio 2000) (citing *Pinney v. Merchants' National Bank of Defiance*, 71 Ohio St. 173, 177 (1904).[1]

This Court acknowledges the right of banks, holding valid mortgages, to receive timely payments. And, if they do not receive timely payments, banks have the right to properly file actions on the defaulted notes — seeking foreclosure on the property securing the notes. Yet, this Court possesses the independent obligations to preserve the judicial integrity of the federal court and to jealously guard federal jurisdiction. Neither the fluidity of

---

[1] Astoundingly, counsel at oral argument stated that his client, the purchaser from the original mortgagee, acquired complete legal and equitable interest in land when money changed hands, even before the purchase agreement, let alone a proper assignment, made its way into his client's possession.

-4-

## CONCLUSION

For all the foregoing reasons, the above-captioned Foreclosure Complaints are

dismissed without prejudice.

**IT IS SO ORDERED.**

**DATE: October 31, 2007**

 **S/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**

---

and jurisdictional burdens. The institutions seem to adopt the attitude that since they have been doing this for so long, unchallenged, this practice equates with legal compliance. Finally put to the test, their weak legal arguments compel the Court to stop them at the gate.

The Court will illustrate in simple terms its decision: "Fluidity of the market" — "X" dollars, "contractual arrangements between institutions and counsel" — "X" dollars, "purchasing mortgages in bulk and securitizing" — "X" dollars, "rush to file, slow to record after judgment" — "X" dollars, "the jurisdictional integrity of United States District Court" — "Priceless."

-6-

the secondary mortgage market, nor monetary or economic considerations of the parties, nor the convenience of the litigants supersede those obligations.

Despite Plaintiffs' counsel's belief that "there appears to be some level of disagreement and/or misunderstanding amongst professionals, borrowers, attorneys and members of the judiciary," the Court does not require instruction and is not operating under any misapprehension. The "real party in interest" rule, to which the Plaintiff-Lenders continually refer in their responses or motions, is clearly comprehended by the Court and is not intended to assist banks in avoiding traditional federal diversity requirements.[2] Unlike Ohio State law and procedure, as Plaintiffs perceive it, the federal judicial system need not, and will not, be "forgiving in this regard."[3]

---

[2]

Plaintiff's reliance on Ohio's "real party in interest rule" (ORCP 17) and on any Ohio case citations is misplaced. Although Ohio law guides federal courts on substantive issues, state procedural law cannot be used to explain, modify or contradict a federal rule of procedure, which purpose is clearly spelled out in the Commentary. "In federal diversity actions, state law governs substantive issues and federal law governs procedural issues." *Erie R.R. Co. v. Tompkins*, 304 U.S. 63 (1938); *Legg v. Chopra*, 286 F. 3d 286, 289 (6th Cir. 2002); *Gafford v. General Electric Company*, 997 F. 2d 150, 165-6 (6th Cir. 1993).

[3]

Plaintiff's, "Judge, you just don't understand how things work," argument reveals a condescending mindset and quasi-monopolistic system where financial institutions have traditionally controlled, and still control, the foreclosure process. Typically, the homeowner who finds himself/herself in financial straits, fails to make the required mortgage payments and faces a foreclosure suit, is not interested in testing state or federal jurisdictional requirements, either *pro se* or through counsel. Their focus is either, "how do I save my home," or "if I have to give it up, I'll simply leave and find somewhere else to live."

In the meantime, the financial institutions or successors/assignees rush to foreclose, obtain a default judgment and then sit on the deed, avoiding responsibility for maintaining the property while reaping the financial benefits of interest running on a judgment. The financial institutions know the law charges the one with title (still the homeowner) with maintaining the property.

There is no doubt every decision made by a financial institution in the foreclosure process is driven by money. And the legal work which flows from winning the financial institution's favor is highly lucrative. There is nothing improper or wrong with financial institutions or law firms making a profit — to the contrary , they should be rewarded for sound business and legal practices. However, unchallenged by underfinanced opponents, the institutions worry less about jurisdictional requirements and more about maximizing returns. Unlike the focus of financial institutions, the federal courts must act as gatekeepers, assuring that only those who meet diversity and standing requirements are allowed to pass through. Counsel for the institutions are not without legal argument to support their position, but their arguments fall woefully short of justifying their premature filings, and utterly fail to satisfy their standing

-5-

INDEX NO. 33781/2007

## SUPREME COURT - STATE OF NEW YORK
## I.A.S. TERM,  PART 37 - SUFFOLK COUNTY

**PRESENT:**

> **HON. JOSEPH FARNETI**
> **Acting Justice Supreme Court**

---

AURORA LOAN SERVICES,

                              Plaintiff,

                    -against-

DONALD MACPHERSON, BELESKA
HOMESTEAD INC., MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC., AS NOMINEE FOR FIRST MAGNUS
FINANCIAL CORPORATION, 1104 NORTH
SEA CO., INC., NEW YORK STATE
DEPARTMENT OF TAXATION AND
FINANCE, "JOHN DOE 1 to JOHN DOE 25",
said names being fictitious, the persons or
parties intended being the persons, parties,
corporations or entities, if any, having or
claiming an interest in or lien upon the
mortgaged premises described in the
complaint,

                              Defendants.

---

**ORIG. RETURN DATE:** DECEMBER 31, 2007
**FINAL SUBMISSION DATE:** JANUARY 10, 2008
**MTN. SEQ. #:** 001
**MOTION: MG**

**PLTF'S/PET'S ATTORNEY:**
DRUCKMAN & SINEL, LLP
242 DREXEL AVENUE - SUITE 2
WESTBURY, NEW YORK  11590
516-876-0800

**DEFENDANT DONALD MACPHERSON'S
ATTORNEY:**
IRWIN POPKIN, ESQ.
1138 WILLIAM FLOYD PARKWAY
SHIRLEY, NEW YORK  11967
631-281-0030

---

Upon the following papers numbered 1 to __6__ read on this motion _____
_____ TO DISMISS _____.
Notice of Motion and supporting papers __1-3__ ; Affirmation in Opposition __4, 5__ ; Reply Affirmation __6__ ; it is,

     **ORDERED** that this motion by defendant DONALD MACPHERSON for an Order, pursuant to CPLR 3211, dismissing the within complaint upon the grounds that: (1) plaintiff does not have standing to institute the instant action; and (2) plaintiff failed to allege that the condition precedent to the commencement of this action has been satisfied, is hereby **GRANTED**, pursuant to CPLR 3211(a)(3), for the reasons set forth hereinafter.

This is an action to foreclose a mortgage held by plaintiff in connection with the real property located at 1104 North Sea Road, Southampton, New York. Defendant DONALD MACPHERSON ("defendant") now moves to dismiss arguing that plaintiff does not have standing to institute the instant action, and that plaintiff failed to allege that a condition precedent to the commencement of this action has been satisfied.

Defendant alleges that plaintiff was not the holder of the subject mortgage at the time the instant action was commenced, and therefore had no standing to commence the action. The within complaint alleges that on or about July 25, 2006, defendant duly executed and delivered to FIRST MAGNUS FINANCIAL CORPORATION a note in the amount of $1,495,000.00, and a mortgage as security therefor affecting the real property commonly known as 1104 North Sea Road, Southampton, New York. As such, defendant challenges the standing of the plaintiff, AURORA LOAN SERVICES, to commence this action to foreclose the aforementioned mortgage.

In opposition, plaintiff claims that it was the assignee of the subject mortgage prior to commencement of this action. In support thereof, plaintiff has annexed an assignment of mortgage, dated October 19, 2007, wherein MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for FIRST MAGNUS FINANCIAL CORPORATION, assigned a mortgage to AURORA LOAN SERVICES LLC. The assignment indicates that the mortgage was executed by defendant on or about June 26, 2006. However, this assignment concerns a note having an original principal sum of $980,000.00, and a mortgage affecting property with an address of 9 Pheasant Run, Quogue, New York. Moreover, the Court notes that the mortgage at issue in the instant action is alleged to have been recorded in the Suffolk County Clerk's Office on August 4, 2006, in Liber/Reel 21354 at page 783, whereas the mortgage referenced in the assignment submitted by plaintiff is alleged to have been recorded in the Suffolk County Clerk's Office on July 26, 2006, in Liber/Reel 21347 at page 650.

In order to prove standing, plaintiff must demonstrate that it was the owner of the note and mortgage at the time it commenced this foreclosure action (*see e.g. Fannie Mae v Youkelsone*, 303 AD2d 546 [2003]). On this record, plaintiff failed to prove its standing with competent evidence to be entitled to the relief demanded in the complaint (*see Wells Fargo Bank Minn. v Mastropaolo*, 42 AD3d 239 [2007]; *TPZ Corp. v Dabbs*, 25 AD3d 787 [2006]; *Fannie Mae v*

*Youkelsone*, 303 AD2d 546, *supra*; *Aurora Loan Servs. v Grant*, 17 Misc 3d
1102[A] [Sup Ct, Kings County 2007]). Accordingly, defendant's motion to
dismiss the complaint is **GRANTED** upon the ground that plaintiff lacks standing
to maintain this action.

   The foregoing constitutes the decision and Order of the Court.

Dated: **March 12, 2008**

         HON. JOSEPH FARNETI
         Acting Justice Supreme Court

Case 2:09-ap-01358-RTB Doc 12 Filed 12/31/09 Entered 01/04/10 14:19:42 Desc
Main Document  Page 16 of 31

01/04/2010

Entered on Docket
March 31, 2009

_____
Hon. Linda B. Riegle
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

* * * * * *

In re ) Case No. BK-S-07-16226-LBR
) Chapter 7
JOSHUA & STEPHANIE MITCHELL, )
)
                    Debtor(s). )
) DATE:   August 19, 2008
) TIME:   3:30 p.m.
_____ )

## MEMORANDUM OPINION

Mortgage Electronic Recording Systems, Inc. ("MERS") through various counsel has filed a number of motions to lift stay.[1] Some of the motions were filed in the name of MERS, while others have been filed in the name of MERS as the nominee for another entity. An order for joint briefing was entered because the substantially same issues were presented in the motions, and a joint hearing was held. *Mitchell* (#07-16226) has been designated as the lead case.[2] The trustee or counsel for the debtor in these cases has opposed the lift-stay motions on the

_____

[1] Motions have been filed in the following cases: #07-16226, #07-016333, #07-16645, #07-17577, #07-18851, #08-10427, 08-11007, #08-11860, #07-13593, #08-10108, #08-10778, #08-12255, #07-17468, #08-11245, #08-11608, #08-11668, #08-11725, #08-11819, #08-12206, #08-12242, #08-12317, #08-12319, #08-10052, #08-10072, #08-10718, #08-11499, #07-16519. Each of the judges will enter their own orders in the matters that are assigned to them.

[2] The docket numbers mentioned in this opinion are to the *Mitchell* case unless otherwise noted.

1

grounds of standing and that MERS is not the real party in interest.

The initial response filed by MERS contained no evidentiary support. Rather it described the role of MERS and its members by relying on law review articles and the recitation of facts in other cases in other districts involving MERS. Prior to the initial argument, MERS attempted to withdraw the motions filed in all but four of the cases. MERS then filed a declaration at the court's direction explaining why the motions were withdrawn. The declaration of William Hultman was filed in *Dart*.[3] The declaration, in addition to explaining MERS' rationale for withdrawing the motions, also attached as exhibits copies of the MERS Membership Application, the MERSCorp. Inc. Rules of Membership, the MERS Procedural Manual, and the MERS Terms and Conditions of Membership.[4] The court also requested appropriate evidentiary support for the allegations concerning the relationship between MERS and the entities for whom the motions were brought. A supplemental declaration was filed in *Michell,* the lead case.[5]

As noted, MERS has attempted to withdraw all but four of its original motions, leaving only *Dart (#08-11007), Hawkins (#07-13593), Ramirez-Furiati (#08-10427),* and *Zeigler (#08-10718).* MERS admits that it failed to follow its own procedures in the motions it wants to withdraw.[6] The debtor, the chapter 13 trustee, and MERS subsequently stipulated to a lift of stay in *Ramirez-Furiati* which the court approved with the acknowledgment that the order contained no finding about MERS' standing.[7] This court will discuss the issues raised in the motions that

---

[3]*Dart* (#08-11007).

[4]Docket #47 in *Dart.*

[5]Docket #74 in *Mitchell* ("Huntman Declaration"). The Declaration also incorporated the prior declaration filed by Mr. Hultman in *Dart.* References in this memorandum to the declaration filed in *Mitchell* include the incorporated declaration and the exhibits thereto.

[6]Docket #74, Declaration of William Hultman ("Hultman Declaration"), Exhibit 1, pp. 4-5. "The fact that MERS chose to not go forward on these . . . motions was not a determination by MERS that it does not have standing to move for relief from stay." Exhibit D to that Declaration sets forth the name of the motions withdrawn and the reason for withdrawal.

[7]Docket #54 in #08-10427.

2

MERS attempts to withdraw,[8] and by this order issues its ruling in *Dart* and *Hawkins*, which are the two cases that are now pending before it.[9]

The court has advised the parties that it would consider any information contained on the MERS website at http://www.mersinc.org/ unless an objection was made. No objection has been filed by either party. The court thus takes judicial notice of the contents of the MERS website.

### *WHAT IS MERS?*

MERS is a national electronic registration and tracking system that tracks the beneficial ownership interests and servicing rights in mortgage loans.[10] The MERS website says this:

> MERS is an innovative process that simplifies the way mortgage ownership and servicing rights are originated, sold and tracked. Created by the real estate finance industry, MERS eliminates the need to prepare and record assignments when trading residential and commercial mortgage loans.

William Hultman, Secretary of MERS, has testified in his Declaration that loans are registered to a "MERS Member" who has entered into the MERS Membership Agreement. MERS Members enter into a contract with MERSCORP to electronically register and track beneficial ownership interests and servicing rights in MERS registered mortgage loans.[11] MERS Members agree to appoint MERS, which MERSCORP wholly owns, to act as their common agent, or nominee, and to name MERS as the lienholder of record in a nominee capacity on all

---

[8]FED. R. BANKR. P. 9014 makes FED. R. BANKR. P. 7041 applicable to contested matters, which includes lift stay motions, and FED. R. BANKR. P. 7041 incorporates FED. R. CIV. P. 41. Under these rules, a party can voluntarily dismiss a lift-stay motion without a court order only if there is a stipulation to dismiss or the dismissal is filed *before* an opposition is filed, and neither is true here.

[9]Some cases were added to the argument calendar after the April 29, 2008 joint hearing order. Separate orders will be entered in each of those cases, which counsel agreed to continue pending a ruling in the "test case." *See* Transcript (Docket # 83) pp. 9 and 76.

[10]MERS Response, Docket # 49, p. 3.

[11]"MERS Members" are mortgage lenders and other entities. ("Membership in MERS Overview," filed with Hultman Declaration, Docket #74.)

3

recorded security instruments relating to the loans registered on the MERS System. When a promissory note is sold by the original lender to others, the various sales of the notes are tracked on the MERS System.[12]

Hultman goes on to say in his Declaration that once MERS becomes the beneficiary of record as nominee, it remains the beneficiary when the beneficial ownership interests in the promissory note or servicing rights are transferred by one MERS Member to another and that it tracks the transfers electronically on the MERS System. So long as the sale of the note involves a member of MERS, MERS remains the beneficiary of record on the deed of trust and continues to act as nominee for the new beneficial owner.[13]

### STANDING

MERS must have both constitutional and prudential standing,[14] and be the real party in interest under FED. R. CIV. P. 17,[15] in order to be entitled to lift-stay relief.

Constitutional standing under Article III requires, at a minimum, that a party must have suffered some actual or threatened injury as a result of the defendant's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by a favorable decision. *Valley Forge Christian Coll. v. Am. United for Separation of Church and State*, 454 U.S. 464, 472 (1982)(citations and internal quotations omitted).

Beyond the Article III requirements of injury in fact, causation, and redressibility, MERS must also have prudential standing, which is judicially-created set of principles that places limits on the class of persons who may invoke the courts' powers. *See Warth v. Seldin*, 422 U.S. 490,

_____

[12]Docket #74, Hultman Declaration at ¶ 3.

[13]Docket # 74, Hultman Declaration at ¶ 4.

[14]The standing doctrine "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).

[15]Stay-relief requests are governed by FED. R. BANKR. P. 4001(a)(1), to which FED. R. BANKR. P. 9014 is applicable. Rule 9014, in turn, incorporates Rule 7017, which makes FED. R. CIV. P. 17 applicable ("[a]n action must be prosecuted in the name of the real party in interest.").

4

499 (1975). As a prudential matter, a plaintiff must assert "his own legal interests as the real party in interest," *Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004), as found in FED. R. CIV. P. 17, which provides "[a]n action must be prosecuted in the name of the real party in interest."

MERS' primary contention is that it has standing by virtue of the fact that it was named as the beneficiary under the deeds of trust and that the trustor (the maker of the note) recognized MERS could take actions of the beneficiary or that it is the nominee of the beneficiary. "In non-judicial foreclosure states, [MERS] must at least be the record beneficiary under the Deed of Trust, with the powers expressly set forth therein, including the power of foreclosure; in addition, as noted, it *may* become the holder on the note under some circumstances. This procedure fully establishes standing under this court's rules and Nevada law."[16] MERS argues in its supplemental brief: "It would be reasonable to hold that a motion that pleads MERS is the of-record beneficiary on the deed of trust is prima facie evidence of standing to move for relief from stay and contains an implied certification that MERS is able to discharge the responsibilities of a movant."[17] MERS states that the issue of standing focuses on who can foreclose and that MERS can foreclose on the properties as a "person authorized to make the sale under the terms of the trust deed.[18] (*See also*, Transcript, Docket # 83, pp. 14-15.)

MERS also argues that it has standing which follows principles set forth in the Uniform Commercial Code that entitle a nominee holder of an instrument to sue to enforce the instrument.[19] It is unclear whether MERS is arguing that it has standing in its own right, or as the agent of the entity entitled to enforce the note, or both. Compare the following arguments, all

---

[16]MERS' Response, Docket #49, p. 9 (emphasis added).

[17]Supplemental Brief of MERS, Docket # 73, p. 10.

[18]Docket #49, p. 10. However, it is not the beneficiary that is authorized to make the sale under the trust deed, it is the trustee.

[19]Docket #49, p. 10.

5

1   made in the same supplemental brief.[20] MERS argues at page 9 of the brief that "this evidence

2   demonstrates MERS right to enforce the note as the note's 'holder.'"[21] In the same brief, at page

3   8, it argues "[t]his evidence further demonstrates MERS authority *to act for* the current beneficial

4   owner of the loan or its servicer."[22] And at page 1 of the brief MERS argues this: "In the motions

5   at issue, MERS is the agent of the original lender and its successors and assigns for defined

6   purposes (such a relationship is termed a 'nominee.')."[23]

7       *STANDING AS THE NAMED BENEFICIARY OR*
        *THE NOMINEE OF THE BENEFICIARY OR ITS ASSIGNEE*

8           MERS does not have standing merely because it is the alleged beneficiary under the

9   deed of trust. It is not a beneficiary and, in any event, the mere fact that an entity is a named

10  beneficiary of a deed of trust is insufficient to enforce the obligation.

11          The deed of trust attempts to name MERS as both a beneficiary and a nominee. The

12  document first says this:

13              MERS is a separate corporation that is acting solely as a nominee
                for Lender and Lender's successors and assigns. MERS is the
14              beneficiary under this Security Instrument.[24]

15      And later it says this:

16              The beneficiary of this Security Instrument is MERS (solely as
                nominee for Lender and Lenders successors and assigns) and the
17              successors and assigns of MERS.[25]

18

19

20

21  _____

22      [20]Docket #73.

23      [21]Docket #73, p. 9.

24      [22]Docket # 73, p. 8. (Emphasis added.)

25      [23]Docket #73, p. 1.

26      [24]*In re Mitchell*, #07-16226, Motion to Lift Stay (Docket # 30), Exhibit B, p. 2, Subpart

27  (E).

28      [25]*In re Mitchell*, #07-16226, Motion to Lift Stay (Docket # 30), Exhibit B, p. 3.

6

MERS' "Terms and Conditions"[26] identifies MERS' interests. The Terms and Conditions say this:

> *MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans.* MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law.

(Emphasis added.)

A "beneficiary" is defined as "one designated to benefit from an appointment, disposition, or assignment . . . or to receive something as a result of a legal arrangement or instrument." BLACK'S LAW DICTIONARY 165 (8th ed. 2004). But it is obvious from the MERS' "Terms and Conditions" that MERS is not a beneficiary as it has no rights whatsoever to any payments, to any servicing rights, or to any of the properties secured by the loans. To reverse an old adage, if it doesn't walk like a duck, talk like a duck, and quack like a duck, then it's not a duck.[27]

But more importantly, even if MERS is the nominee of the beneficiary, or the motion was brought by the beneficiary, that mere allegation is not sufficient to confer standing.

Under Nevada law a negotiable promissory note[28] is enforceable by: (1) the holder[29] of the

---

[26]"MERS Terms and Conditions" filed in *Dart* (#08-11007) at ¶ 2, Docket #47-7. (Emphasis added.)

[27]The court is aware of at least one case in this district, *Elias v. Homeeq Serv.*, 2009 WL 481270 (D. Nev. 2009)(slip copy), in which MERS has been found to have standing to foreclose as a nominee beneficiary of a deed of trust. While the court in *Elias* found the deeds of trust, notices of foreclosure, and the trustee's deed upon sale established MERS' standing, there is nothing in the opinion to suggest that MERS lacked possession of the notes.

[28]The court assumes, without deciding, that the notes in question are negotiable instruments. If they aren't, then custom and practice will treat them as if they are. For example,

7

1  note, or (2) a nonholder in possession of the note who has the rights of a holder.[30] Thus if MERS

2  is not the holder of the note, then to enforce it MERS must be a transferee in possession who is

3  entitled to the rights of a holder or have authority under state law to act for the holder. Simply

4  being a beneficiary or having an assignment of a deed of trust is not enough to be entitled to

5  foreclose on a deed of trust. For there to be a valid assignment for purposes of foreclosure both

6  the note and the deed of trust must be assigned. A mortgage loan consists of a promissory note

7  and a security instrument, typically a mortgage or a deed of trust.[31] When the note is split from

8  the deed of trust, "the note becomes, as a practical matter, unsecured." RESTATEMENT (THIRD) OF

9  PROPERTY (MORTGAGES) § 5.4 cmt. a (1997). A person holding only a note lacks the power to

10  foreclose because it lacks the security, and a person holding only a deed of trust suffers no

11  default because only the holder of the note is entitled to payment on it. *See* RESTATEMENT

12  (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. e (1997). "Where the mortgagee has

13  'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no

14  interest in the underlying debt or obligation, has a worthless piece of paper." 4 RICHARD R.

15  POWELL, POWELL ON REAL PROPERTY, § 37.27[2] (2000).

16      Given this, it is troubling that MERS apparently believes that in states such as Nevada

17

18  —————————————

19  under N.R.S. § 104.9012(tt), Nevada's Article 9, an "instrument" is defined as a negotiable
    instrument, "or any other writing that evidences a right to the payment of a monetary
20  obligation . . . and is of a type that in ordinary course of business is transferred by delivery with
    any necessary endorsement or assignment." "Instruments" are thus defined somewhat broadly
21  according to ordinary business practices.

22
     [29]A "holder" is the person in possession of a negotiable instrument that is payable either
23  to a bearer or to an identified person who has possession. N.R.S. § 104.1201(u)

24
     [30]N.R.S. § 104.3301. A negotiable promissory is also enforceable under N.R.S.
25  § 104.3301(c) by a nonholder of a note that has been stolen, destroyed, or paid by mistake. There
    has been no allegation in this case making this provision relevant here.
26

27      [31]Nevada recognizes that parties may secure the performance of an obligation or the
    payment of a debt by means of a deed of trust. N.R.S. § 107.020. The maker of the note is the
28  trustor and the payee is the beneficiary.

8

possession of the note is not required if no deficiency is sought.[32]  Hultman says this in his declaration:

> In non-judicial foreclosure states, if the Member chooses to have MERS foreclose under the power of sale provision in the security instrument and is not seeking a deficiency judgment, then the note does not need to be in the possession of the Member's MERS Certifying Officer when commencing the foreclosure action; provided, however, that under no circumstances may the Member allege that the note is in MERS possession and seek enforcement of the note unless MERS actually possesses the note.[33]

This distinction between judicial and non-judicial foreclosure states, or deficiency and non-deficiency ones, is one which MERS has designed out of whole cloth. In order to foreclose, MERS must establish there has been a sufficient transfer of both the note and deed of trust, or that it has authority under state law to act for the note's holder. *See* RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. c (1997). *See also, In re Vargas*, 396 B.R. 511, 516-17 (Bankr. C.D. Calif. 2008).

### *DOES MERS HAVE STANDING AS THE AGENT OF THE MEMBER OR IN ITS OWN RIGHT?*

The mere statement that the movant is a member of MERS does nothing but lay the groundwork for agency. In order to enforce rights as the agent of the holder, MERS must establish that its principal is entitled to enforce the note. Motions brought by MERS as nominee could meet the threshold test of standing, and MERS might be the "real party in interest" under FED. R. CIV. P. 17, if MERS is the actual nominee of the present Member who is entitled to enforce the note. Under Rule 17 a party in interest is any party to whom the relevant substantive law grants a cause of action. *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1038 (9th Cir. 1986). Counsel for MERS acknowledged during oral argument that MERS is the agent for its

---

[32]Despite MERS' contention that the mere status as a beneficiary or nominee of a beneficiary is sufficient, MERS has tried to withdraw most of its motions because it could not ascertain that its Member had possession of the note when the motion was filed. *See* Hultman Declaration at p. 4, Docket #74; Docket #49 at p.11; and Docket #47, Exhibit D in *Dart*).

[33]Hultman Declaration, Docket #74, ¶ 4.

9

members only.[34] If a note has been transferred to a non-member, then MERS cannot act as the agent. One cannot assume that just because MERS was named as the initial nominee in the deed of trust that it still retains that relationship with the holder of the note. Moreover, by virtue of the fact that some of the motions were filed even after the note was transferred out of the MERS system, it is apparent that MERS has not tracked (or been appropriately advised of) the assignment of the note to a non-member. For example in *Moore*,[35] MERS brought a motion to lift-stay in February 2008 as nominee for Quick Loan Funding.[36] Later, in July 2008, an amended lift-stay motion was brought by GRP Loan in *Moore*.[37] Exhibit C to the amended motion shows that an assignment of the deed of trust was made from MERS to GRP on February 27, 2007, which pre-dates MERS' lift-stay motion.[38] Similarly, in *Mercado*,[39] a matter which was added to the argument calendar after the order for joint briefing,[40] MERS brought a motion to lift-stay as nominee for MILA.[41] However, as seen in a later stipulation to sell the property,[42] Homecomings Financial Network was the entity who was entitled to enforce the note.

In the remaining cases, MERS has attempted to establish its standing through the affidavits of "Certifying Officials." Under the Membership Agreement, MERS provides Members a corporate resolution designating one or more employees of the Member a MERS Certifying Officer. This resolution, among other things, appoints the individual as an assistant

---

[34]*See also*, Docket #74, Hultman Declaration at ¶ 4.

[35]*Moore (#*07-16333).

[36]Docket #37 in *Moore*.

[37]Docket #59 in *Moore*.

[38]Docket #59, Exhibit C.

[39]#07-17690.

[40]Docket #44 in *Mercado*.

[41]Docket #28 in *Mercado*.

[42]Docket # 50, Exhibit 1 in *Mercado*.

10

secretary and vice president of MERS. They are given the power to "take any and all actions and execute all documents necessary to protect the interest of the Member, the beneficial owner of such mortgage loan, or MERS in any bankruptcy proceeding regarding a loan registered on the MERS System that is shown to be registered to the Member.[43] There appears to be absolutely no requirement that these Certifying Officers have any knowledge of the loan in question. From the MERS website it appears that the "Certifying Official" (the person who works for the holder of the note) is not an employee of the servicer either.[44]

In *Hawkins* the motion was brought by MERS "solely as nominee for Fremont Investment & Loan, its successors and/or assigns."[45] However, in his affidavit at ¶ 6, Victor Parisi[46] states that the beneficial ownership interest in the *Hawkins* note was sold by Fremont Investment & Loan and ownership was transferred by endorsement and delivery. While the affidavit goes on to the say that MERS was a holder at the time the motion was filed, it is obvious that MERS has no rights to bring the motion as nominee of Fremont given that Fremont no longer had any interest in the note.

Similarly, in *Ziegler*[47] the motion was brought by MERS "solely as nominee for Meridias Capital, Inc., its successors and/or assigns."[48] Yet the affidavit of Stacey Kranz at ¶ 6 states that "the beneficial ownership interest in the Zeigler Note was sold by Meridias and ownership was transferred by endorsement and delivery. The Zeigler Note was subsequently endorsed in

---

[43]Form Corporate Resolution, attached to Exhibit C to the Hultman Declaration, filed in *Dart*, #08-11007.

[44]The website says that "[a]fter your mortgage loan closed, your lender more than likely outsourced the job of managing your loan to another company called a SERVICER. This is the company you call when you have questions about your loan."

[45]Docket #28 in #07-13593.

[46]Docket #49, Exhibit C, and Docket #56, Exhibit A in *Mitchell*.

[47]#08-10718.

[48]#08-10718, Docket #21.

blank."[49] An additional affidavit was filed by German Florez, the president of Meridias, who disavowed "any interest in the Note and Deed of Trust regarding the Subject Property."[50]

A slightly different defect exists *Dart*. That motion was brought by MERS "solely as nominee for Centralbanc Mortgage, its successors and/or assigns."[51] However, Ms. Mech, as Certifying Officer, testifies that the note is held by Bank of America, who is listed as the current servicer, and who "had (or has) physical possession of the note in its files."[52] In a previous affidavit, Ms. Mech testified that "the beneficial ownership interest in the Dart Note was sold by Centralbanc and ownership was transferred by endorsement and delivery. The Dart Note was subsequently endorsed in blank."[53]

So while in each of these cases MERS may really be contending that is it entitled to enforce the note in its own right through possession, or as the nominee of the transferee, the motion was brought instead as nominee of an entity that no longer has any ownership interest in the note.

Additionally, each motion has been brought in the name of the lender and "its successors and/or assigns." Under FED. R. CIV. P. 17 an action must be prosecuted in the name of the real party in interest. "As a general rule, a person who is an attorney-in-fact or an agent solely for the purpose of bringing suit is viewed as a nominal rather than a real party in interest and will be required to litigate in the name of his principal rather than in his own name." 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1553 (2d ed. 1990). An agent with ownership interest in the subject matter of the suit is a real party in interest. *Id.* There is no evidence, however, of an agency relationship here or that MERS has any ownership interest

---

[49]Docket #56, Exhibit C-1 in *Mitchell*.

[50]Docket #56, Exhibit C-3 in *Mitchell*.

[51]Docket #25 in *Dart* (#08-11007).

[52]Docket #81-1 at ¶ 4 in *Mitchell*.

[53]Docket #49-1 at ¶ 6 in *Mitchell*.

12

making it the real party in interest under Rule 17.

### OTHER EVIDENCE PROBLEMS

Even if the defects were ones of pure pleading,[54] the testimony in these cases is neither competent nor admissible. Each of the affiants in the remaining cases testify as follows:

> I have been appointed as Assistant Secretary of Mortgage Electronic Registration Systems., Inc. ("MERS") under a Corporate Resolution that was executed on [date]. I make this affidavit in support of Movant. I have reviewed the loan file relating to the above-referenced matter, and if called upon to testify as to the facts set forth in this Affidavit, I could and would testify competently based upon my review.

The affiant then purports to set forth the history of the negotiation and transfer of the note and who now has possession.[55]

First, this testimony is not admissible because there is no evidence that the affiants are competent witnesses. The Federal Rules of Evidence apply in bankruptcy[56] yet there is no evidence that these Certifying Officers have adequate personal knowledge of the facts under Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").[57]

---

[54]For example, Mr. Hultman has stated that a number of motions were withdrawn because they identified MERS as the payee under the note. Hultman Declaration, Docket #74 in *Mitchell*.

[55]For example Ms. Mech testifies in her affidavit (Docket # 81-1) that at the time MERS filed the motion to lift stay in *Dart*:

> Bank or America, who is listed as the current servicer on the Dart (MIN: 100233602006080675) loan registered on the MERS System, had (and has) physical possession of the original notes in its files. MERS in turn has possession of those documents through a MERS Certifying Officer who is an employee of the member listed as servicer on the MERS System.

[56]Fed. R. Bankr. P. 9017.

[57]Stacey Kranz, "an Assistant Secretary of [MERS] under a Corporate Resolution" testifies in *Zeigler* (#08-10718) that "MERS was in physical possession of the Zeigler Note at the time MERS filed the motion . . . ."(Docket #73 in *Zeigler* #08-10718). Mr. Victor Parsi, similarly appointed, testifies in *Hawkins* that "MERS was a holder of the Hawkins Note at the time the

13

Ms. Mech's bald assertion that she has "reviewed the loan file" is inadequate to show that she is personally knowledgeable of the facts. Neither are the purported notes and deeds admissible. For business records to be admissible as an exception from the hearsay rule under FED. R. EVID. 803(6) there must be a showing that the records were:

> (1) made at or near the time by, or from information transmitted by, a person with knowledge;
> (2) made pursuant to a regular practice of the business activity;
> (3) kept in the course of regularly conducted business activity; and
> (4) the source, method, or circumstances of preparation must not indicate lack of trustworthiness.

These elements must be established either by the testimony of the custodian or other qualified witness or must meet certification requirements. *See In re Vee Vinhnee*, 336 B.R. 437, 444 (B.A.P. 9th Cir. 2005).

**CONCLUSION**

The lift-stay motions in *Dart* and *Hawkins* are denied. MERS may not enforce the notes as the alleged beneficiary. While MERS may have standing to prosecute the motion in the name of its Member as a nominee, there is no evidence that the named nominee is entitled to enforce the note or that MERS is the agent of the note's holder. Indeed, the evidence is to the contrary, the note has been sold, and the named nominee no longer has any interest in the note.

**IT IS SO ORDERED.**

---

Motion for Relief was filed in MERS name. . . ."(Docket #56-2 filed in *Mitchell*.)

14

1    Copies noticed through ECF to:

2    MICHELLE L. ABRAMS
      JEREMY T BERGSTROM
3    RAYMOND A. CARDOZO
      LAURA L. FRITZ
4    THOMAS J. HOLTHUS
      EDDIE R. JIMENEZ
5    LENARD E. SCHWARTZER
      ELSIE L. SECOQUIAN
6    U.S. TRUSTEE - LV

7    Copies noticed through BNC to:

8    JOSHUA & STEPHANIE MITCHELL
      1081 NORTH CLIFF CREEK
9    MERIDAN, IO 83642

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15