26

Katherine Christensen
1134 West Grand Caymen Drive
Gilbert, Arizona 85233
Tel: (480) 813-3885
Pro Se

FILED
2010 JAN -4 PM 2: 10
CLERK
U.S. BANKRUPTCY
DISTRICT OF ARIZONA

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA, PHOENIX DIVISION

| | |
|---|---|
| Katherine Christensen, In Person<br>        Plaintiff,<br>        Vs.<br>AURORA LOAN SERVICES LLC,<br>Mr. John Skoba d/b/a CFO AURORA<br>LOAN SERVICES LLC, MCCARTHY<br>HOLTHUS LEVINE LLP, PAUL M.<br>LEVINE, MATTHEW A. SILVERMAN,<br>JESSICA R. KENNY, PERRY &<br>SHAPIRO LLP, CHRISTOPHER R.<br>PERRY, JASON P. SHERMAN, QUALITY<br>LOAN SERVICE CORP. a California<br>corporation, JIM MONTES d/b/a/ Vice<br>President QUALITY LOAN SERVICE<br>CORP. a California corporation,<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS INC., JIM<br>MONTES d/b/a/ Vice President<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS INC.,<br>GREEN RIVER CAPITAL,<br>COUNTRYWIDE, HOMECOMINGS,<br>NORTH AMERICAN TITLE AGENCY<br>OF ARIZONA C/O NORTH AMERICAN<br>TITLE INSURANCE CO., MARICOPA<br>COUNTY SHERIFF OFFICE, CHRIS<br>MCBREARTY, CHARTER FUNDING,<br>FIRST MAGNUS FINANCIAL,<br>MERENDON MINING, INSTITUTE FOR<br>FINANCIAL LEARNING, JOHN DOES<br>And JANE DOES 1-100, ABC<br>CORPORATIONS 1-100, and XYZ<br>PARTNERSHIPS 1-100,<br><br>        Defendants, | Case No.: 09-21818-RTB<br>Adversarial Case No. 09-ap-01358-RTB<br><br>CHAPTER 7<br><br>SUPPLEMENT TO COMPLAINT FILED<br>12-31-09 MOTION FOR DECLARATORY<br>AND INJUNCTIVE RELIEF FROM VOID<br>SALE AND FORCIBLE DETAINER<br><br>REQUEST FOR EVIDENTIARY<br>HEARING AND ORAL ARGUMENT<br><br><br><u>JURY TRIAL DEMANDED</u><br><br><br><br><br><br>Assigned to:  Hon. Redfield T. Baum |

NOW COMES Plaintiff, **Katherine Christenson** ("Plaintiff"), who files this

**SUPPLEMENT TO ORIGINAL COMPLAINT FILED 12-31-09, MOTION FOR**

**DECLARATORY AND INJUNCTIVE RELIEF FROM VOID SALE AND FORCIBLE DETAINER, REQUEST FOR EVIDENTIARY HEARING AND ORAL ARGUMENT JURY TRIAL DEMANDED.** Plaintiff moves the court for Emergency Declaratory and Injunctive Relief, to Void the Trustee's Sale of Plaintiff's property, as occurred on May 7, 2009 and, to Void ab initio, the Deed of Trust as executed on August 17, 2006, due to *inter alia*, its operation as a Cognovit Note/Confession of Judgment without Due Process afforded plaintiff; failure to possess the Original Promissory Note; privity of contract; adhesion; unconscionability; and related violations of plaintiff's rights. Plaintiff further seeks Injunctive Relief, to Enjoin Defendants; named and as yet unnamed from Selling, Converting, or, by any means whatsoever, from Dispossessing Plaintiff of her Property, including, but not limited to Enjoining the Maricopa Sheriff's Office (or any part) from physically ejecting Plaintiff from her property as currently scheduled until all Facts, are Clarified. Plaintiff additionally requests an Evidentiary Hearing and Oral Argument. Plaintiff hereby incorporates by reference all legal points and authorities in the COMPLAINT filed on Thursday December 31, 2009 (hereinafter "Original Complaint"). And, in support thereof, Plaintiff hereby avers as follows:

## THE PARTIES AND VENUE

## ADDITIONS AND CORRECTIONS TO ORIGINAL COMPLAINT 12-31-09

All points in "Parties and Venue" listed in the Original Complaint remain the same and Plaintiff hereby adds the following additional facts;

1. Defendant, Mortgage Electronic Registration Systems Inc., (hereinafter "MERS"). Defendant MERS, is, upon information and belief, a national repository, and/or clearinghouse, for mortgage notes, assignments, and related security instruments. Upon information and belief, the creation of MERS was specifically designed to hide the true identity of Note holders, and their subsequent assignees, for the expressed purpose of said notes frequent bundling en masse, and subsequent, unbridled exchange into the stream of commerce,

Case 2:09-ap-01358-RTB   Doc 15   Filed 01/04/10   Entered 01/05/10 18:59:10   Desc
SUPPLEMENTAL COMPLAINT-ALS-BK        Main Document        Page 2 of 26

01/05/2010

thereby circumventing the uniform (required) noticing to borrowers and alike, as to who, at any given time, actually owns the note(s). Until the completion of discovery, Plaintiff is unable to verify, the breadth and extent of Defendant MERS activities in relation to Plaintiff's property, including, but not limited to subsequent movement of the requisite note, due to, as stated above, Defendant MERS principle operation is one that obscures to the detriment of Plaintiff and/or similarly-situated homeowners, the exact location, at any given time of the note. Plaintiff therefore contends, it is essential to this complaint, that discovery be commenced to properly and fully determine Defendant MERS' involvement, upon which, the facts, in relation to the note, and, who, if anyone, can prove at all material times to Defendants' actions, was the proper holder thereof. Defendant MERS lists an address as P.O. Box 2026, Flint, Michigan 48501-2026.

2. Defendant Jim Montes (hereinafter "Montes") has signed documents in Plaintiff's possession as either Vice President of MERS or as Vice President of QUALITY LOAN SERVICE CORP.,, At all times relative to this complaint both corporations were based in San Diego California.

3. Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. was at all times relevant to this complaint suspended from doing business in California. However MERS is engaged in damage control as it is showing as active as of 6-1-09 with John Brosnan as the agent for service of process.

4. Defendant QUALITY LOAN SERVICE CORPORATION (hereinafter "QLS") is the company foreclosing on Plaintiff's residence. At all times relevant to this complaint, the lawyers Matthew Silverman and Paul Levine from McCarthy Holthus Levine were on the board of directors of QLS.

Case 3:09-ap-01358-BTB  SUPPLEMENTAL COMPLAINT ALS-BK  Doc 15  Filed 01/04/10  Entered 01/05/10 18:59:10  Desc
Main Document  Page 3 of 26

01/05/2010

5.      Defendant McCarthy Holthus Levine (hereinafter "MHL") is the law firm hired by the servicer AURORA LOAN SERVICES LLC to foreclose on Plaintiff's Residence. MHL is upon information and belief of Plaintiff, operating what is tantamount to wholesale slaughter upon innumerable numbers of Arizona families, by improperly divesting them of their property rights, employing nefarious means, nepotism, and other questionable measures of an arbitrary and capricious nature, to further an unjust enrichment on the backs of Arizona citizens in violation of Public Policy.

6.      Plaintiff hereby adds HOMECOMINGS FINANCIAL (hereinafter "Homecomings") as a Defendant in the Complaint.    Upon information and belief, Homecomings is believed to have been at one time assigned, (but not having taken actual possession of) a certain note and/or deed that is presumed to have involved plaintiff, without her prior knowledge.  Plaintiff believes that Homecomings is one of several defendant entities herein, who, cloaked under the umbrella of Defendant MERS, is/was engaged in illegal arbitrage, and/or unlawfully fluffing their assets, by tacitly and improperly claiming rights in Plaintiff's note and/or Deed.    Defendant Homecomings, upon information and belief of Plaintiff, is using Defendant First Magnus Financial, through artifice of a mortgage-backed, pass-through certificate scheme to further unjustly enrich itself at the sole expense of Plaintiff.

7.      Plaintiff hereby adds Maricopa County Sheriff's Office (hereinafter "Sheriff") as a Defendant in the Complaint. The Sheriff is responsible for and/or has been charged with the forcible eviction of Plaintiff from her property. Upon information and belief, the Sheriff is the supreme law enforcement officer of the County. Plaintiff believes the Sheriff has a duty, under the oath he took, to protect all the citizens of Maricopa County, when evidenced from illegal activities.

Case 2:09-ap-01358-RTB   Doc 15   Filed 01/04/10   Entered 01/05/10 18:59:36   Desc
SUPPLEMENTAL COMPLAINT ALS-BK
Main Document      Page 4 of 26

01/05/2010

## **GENERAL ALLEGATIONS**

## **ADDITIONS TO ORIGINAL COMPLAINT 12-31-09**

## **A. CAUSE OF ACTION-ORIGINAL NOTE AND DUE PROCESS**

**8.** Plaintiff incorporates by reference all points in the Original Complaint and repeats, re-alleges and incorporates by reference the foregoing paragraphs

**9.** Plaintiff sent numerous Qualified Written Requests and cancellation and right of rescission to Defendant ALS and/or their agent(s). The most recent was sent on her behalf by Foreclosure Defense Group and was received by ALS on December 14, 2009. THIS MATTER IS CLOSED THE CONTRACT HAS BEEN CANCELED..

**10.** On or about August 17, 2006, it is alleged by defendants ALS et. al., that a promissory note was executed by Plaintiff on behalf of defendants ALS et. al. in the amount of five hundred thirty six thousand dollars ($536,000.00) (hereinafter "Note").

**11.** Plaintiff avers that at no time from the date of the alleged execution in August 17, 2006 up through and including defendants' current actions, has any defendant, at any time, produced such evidence that either of these Notes, as <u>Genuine Originals</u> exist; and, that any of the above-named defendant(s) is and/or was, at all material times relevant hereto, in possession thereof.

**12.** On or about August 17, 2006 Plaintiff executed a Deed of Trust in the amount of five hundred thirty six thousand dollars ($536,000.00) (hereinafter "Deed")

**13.** The Deed is endorsed to and on behalf, of Defendant First Magnus as original lender; names Defendant North American Title as Trustee and further names MERS as "solely as nominee for the lender" AND as "beneficiary under this security agreement". **As MERS did not fund the loan they cannot be the real party in interest. (Emphasis added for clarity)**

14. Despite the inherent conflict in the statements many courts have held MERS' status as a "nominee" as very limited. To wit, a nominee cannot act without express authority particularly with regard to conveyance of property. Further, the naming of a beneficiary other than the "lender" or party to the note may have the effect of *severing the note from the security instrument rendering it unsecured and potentially creating a cloud on the title.* In the case of the subject loan, according to the Lenders Closing Instructions the beneficiary under both Property insurance and Title insurance is First Magnus Financial not MERS. Courts have also held that MERS cannot be a "beneficiary" or real party in interest as they do not "lend" oney, MERS proffered no consideration in the transaction and consequently would not be "damaged" if the borrower were to default under the note.

15. Despite the actual naming of MERS as the beneficiary in the original Deed of Trust, this is factually inaccurate. Consequently, any subsequent notices, assignments or other documents requiring an authorized officer of the *actual* beneficiary could be called into question, particularly where they are executed by a third pary acting as a purported agent of the beneficiary.

16. Both the Note and the Deed were presented as a take it or leave it offer, without benefit of adequate review or negotiation.

17. Plaintiff was unaware, nor noticed, of the possibility that Note may be subsequently assigned during the application process or at closing.

18. The formal execution of said Note and Deed as alleged on August 17, 2006 were without benefit of any explanation as to the specific terms of the Note or Deed.

19. If the Holder in due Course pledged or transferred rights and in fact conveyed 100% interest in the subject property, which is what was standard industry practice at the time, to certificate holders (investors) in the bonds that were issued and by contract becomes only the

holder as custodian for the last transferee, then the holder is no longer a holder in due course, the transferee is the holder in due course as soon as he demands delivery of the note, mortgage or other admissible documentation showing his/her/its ownership.

20.    Further, the fact that the loan was originally serviced by Defendant Homecomings, which is owned by GMAC, it is hard to ascertain how Defendant Aurora Loan Services LLC got involved.   With First Magnus in Bankruptcy, how and from whom did the foreclosing party or alleged Trustee obtain authority from the Bankruptcy court to dispose of or transfer the property?

21.    Plaintiff contends that in order to have lawfully effectuated the sale of Plaintiff's Residence, <u>only the actual holder of the genuine original promissory note has the right to do so</u>. (Emphasis added) Absent production of the genuine original note, reflecting endorsements by an authorized officer(s), with verifiable chain of document custody up to the last transferee there can be no assurance to the plaintiff that she is not exposed to financial double jeopardy or a "double liability" ....should the court allow the subject foreclosure proceedings to continue there can be no assurance another party in the securitization chain with a colorable claim, will not surface who is in possession of the genuine original note and seek to enforce it again against the plaintiff. This is not just idle theory. Plaintiff has already been harassed, terrorized and subjected to double jeopardy with Aurora Loan Services LLC taking her to court twice within two weeks for the same loan and same property.  Each time with a different group of powerful attorneys; first on June 16, 2009 with McCarthy Holthus Levine and then on June 25 with Perry & Shapiro.

22.    Yet, there is no evidence of record as to if the Note was actually and properly assigned, and delivered as to be certain as to who actually holds and/or held the Note at all material times in question.

23.    It is though these assertions that MHL, by and through its principal, associate, agent, and/or employee QLS subsequently executed sale of Plaintiff's property on May 7, 2009.

24.    MHL asserts in their attempt to eject plaintiff from her property, that ALS is not only the rightful assignee by First Magnus but is also the successful bidder at time of sale.

25.    At no time, despite plaintiff's protestations, did any Defendant, at any time, provide proof of being the holder of the original promissory note, or, following the sale of Plaintiff's property, surrender said note in lieu of having obtained Plaintiff's property at time of sale.

26.    A Promissory note is a negotiable instrument, which is regulated as such under the Uniform Commercial code (UCC) for which, Arizona has adopted.

27.    With regards to enforcement of a negotiable instrument, (including a secured note) it may only be enforced by the actual "holder" of the note.

28.    Under the UCC, actual possession is mandated of the secured party, his agent, or baillee.

29.    The UCC defines a "holder" as "[a] person who is in possession of...an instrument...issued or endorsed to him or to his order." See _Hotel Corp. v. Taylor and Fletcher v. Foremans Inc_., 301 N.C. 200, 271 S.F. 2d 54 (1980)

30.    There are two essential provisions applicable to the enforcement of a negotiable instrument, for a person to qualify as a genuine and/or actual "holder" of the note: (a) a person **must be in possession of the instrument**, and (b) the instrument must be payable to that person.

31.    The right to enforce a negotiable instrument is only transferable <u>by delivery of the instrument itself</u>.

Case 2:09-bk-01356-RTB  Doc 15   Filed 01/04/10   Entered 01/05/10 10:59:06   Desc
SUPPLEMENTAL COMPLAINT DOS-15
Main Document        Page 8 of 26

01/05/2010

32. "[A] fundamental feature of negotiable instruments is that they are transferable by the delivery of possession, not by contract or assignment." See *In Re Hwang*, **LA08-15337SB** (emphasis added)

33. Possession is significant in determining whether a person is a holder, and the absence of possessions defeats the status. *See In Re Foreclosures of Connolly v. Potts*, 63 N.C. App. 547, 306 S.E. 2d 123 (1983)

34. Plaintiff contends that Defendants ALS and QLS are not now nor have they ever been the holder of the Genuine Original Note, upon which, they first caused to unlawfully sell Plaintiff's property and are now using Defendant Sheriff, as a state actor, under color of badge and authority, to forcibly evict Plaintiff from her property, as otherwise alleged to have been given them by Defendant Jim Montes by and through MERS.

35. Actual possession is absolutely required for the perfection of the security interests, and accordingly, for a court, any court to find that "constructive notice", however provided, i.e. allegation(s) of authority, assignment, whether recorded or not, as being sufficient for the purposes of foreclosure, is tantamount to a serious and egregious error of said court, and is in violation of well-established law, and plaintiff's inherent Due Process rights. See In RE Staff Mortgage and Investment Corp., 550 F.2d 1228 (9th Cir. 1977) See also, *Allegaeri v. Chemical Bank*, 657 F.2d 495 (2nd Cir. 1998); and, *In RE Marysville Savings & Loan Corp.*, 743 F.2d 414 (6th Cir. 1985)

36. Defendants ALS, MERS, QLS, Green River Capital each claim at various points, interest in either the note or Deed. Upon information and belief, Plaintiff alleges that actions of the aforesaid Defendants' constitute illegal arbitrage, and unjust enrichment of said Defendants individually and severally, having inflated the assets, absent of having in their possession the requisite Genuine Original Note.

37.     For there to be a valid assignment, there must be more than the assignment of the Deed alone; the note itself must be assigned.  See *Carpenter v. Longan,* 83 83 U.S. 271, 274 (1872) (stating that) "[t]he note and mortgage are inseparable; the former as essential, the latter as incident." (emphasis added) Further, "[a]n assignment of the note carries mortgage with it, while assignment of the latter alone is a nullity." *In Re Leisure Time Sports, Inc.,* 194 B.R. 859, 861 (9th Cir. 1996) See also, Restatement (3d) of Property (Mortgages) § 5.4, stating that, "[a] mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation that the mortgage secures." (emphasis added)

38.     Plaintiff avers, the above-named Defendants did not have, and/or cannot produce the Genuine Original Note(s), based upon an assignment of a (unspecified) Deed, upon which they exclusively relied in selling Plaintiff's home at Trustee Sale, and now further improperly rely, with the assistance of Defendant Sheriff and this Court in forcibly ejecting Plaintiff from her property.

39.     ALS by and through QLS with assistance of MHL subsequently carried out the sale of Plaintiff's property, and now seek to evict Plaintiff, without ever having obtained the Genuine Original Note, required to be in their possession, prior initiating any action against Plaintiff, or having in their possession, the actual original note at time of sale.

40.     The conflict in averments and documents made by and/or relied on by the aforesaid Defendants is sufficient to raise beyond the mere speculative level, who, if anyone, actually is and/or was in possession of the Genuine Original note at all times material to the actions individually and severally undertaken by said Defendants.

41.     Plaintiff has a right to see the Genuine Original note and to have fully and properly addressed who, if any of the Defendants actually is/was in possession.

Case 2:09-ap-01358-RTB   Doc 15   Filed 01/04/10   Entered 01/05/10 18:59:40   Desc
SUPPLEMENTAL COMPLAINT-ALS-BK
Main Document       Page 10 of 26

01/05/2010

42.     Absent Defendants actual possession of the Genuine Original Note at all material times relevant to Defendants actions, as executed both individually and severally, deprives Defendants ALS, QLS (or any party so claiming) of lawful standing by which to take such actions, as well as any and all representative Defendants including but not limited to Defendants MHL and Perry & Shapiro.

43.     Said Defendants inability to produce the Genuine Original note which is clearly Plaintiff's right, and allow Plaintiff to inspect and authenticate actual possession of the Genuine Original note, unreasonably subjects Plaintiff to potential double liability.

**Securitization of the Note:**

**44.**     If a loan has been securitized, the real party in interest is the trustee of the securitization trust, not the servicing agent. *See LaSalle Bank N.A. v. Nomura Asset Capital Corp., 180 F.Supp.2d 465, 469-71 (S.D.N.Y.2001)* (*"LaSalle-Nomura"*); *accord, LaSalle Bank N.A. v. Lehman Bros. Holdings, Inc., 237 F.Supp.2d 618, 631-34 (D.Md.2002)* (*"LaSalle-Lehman"*).

**B. PRIVITY OF CONTRACT**

45.     On or about August 17, 2006 a promissory note was executed by Plaintiff on behalf of First Magnus Financial.

46.     At no time prior to or during the execution of this note, was Plaintiff made aware that by executing said note, it may be subject to subsequent assignment.

47.     Defendants First Magnus Financial and their representatives, Defendants John and/or Jane Doe, failed to notice Plaintiff that the note that was being executed may be assigned thereafter, in violation of Plaintiff's right to Privity of Contract and 12 U.S.C. §2605 et. Seq. which, among other things, strictly regulates noticing requirements, that must occur, prior to, at settlement and subsequently during the entire life of the loan.

48.    Upon information and belief of Plaintiff, the initial assignment went to Defendant MERS in their dual role as sole nominee for lender and as beneficiary. Countrywide was assigned servicing rights.

49.    MERS is merely a glorified warehouse for the accumulation of various notes, mortgages/deeds, for the expressed purpose of concealing the true identity of a given noteholder.

50.    MERS is employed to create a false impression of a note's location, thereby allowing parties such as the Defendants, the ability to frequently and repetitively bundle and move said note(s) with ease and without detection, in acts of questionable arbitrage, often resulting in competing entities simultaneously benefiting from artificially-enhanced asset balance sheets, all of in furtherance of an unjust enrichment without notification to the makers of the note(s).

51.    Upon information and belief of Plaintiff, First Magnus Financial likewise assigned North American Title as trustee on the Deed.

52.    It is not clear who assigned what to whom in the long chain of entities whose names appear on the various documents and who claim servicing rights.

53.    Defendants have provided documents with conflicting and/or fraudulent information that can only be resolved in a judicial proceeding with all potential stakeholders present. That is Defendants burden if they want affirmative relief. Plaintiff has no knowledge where the note is, or who the owner of the note is, if Defendants have been paid in full by credit default insurance or by Federal bailout. None of the parties identified thus far had anything to do with the funding of the subject loan and stand or stood to lose nothing if permitted to proceed.

Case 2:09-ap-01358-BTB Doc 15    Filed 01/04/10    Entered 01/05/10 18:59:40    Desc
SUPPLEMENTAL COMPLAINT Page 15    Main Document    Page 12 of 26

01/05/2010

54.     Non-judicial foreclosure is a privilege granted by the citizens of Arizona for judicial economy not an avenue to circumvent due process and rules of evidence which is what appears to have occurred here.

55.     All of the foregoing (and even more is suspect) is in violation of Plaintiff's Privity of Contract, and Title 12, U.S.C. § 2605 et. seq.

## C. DEED OF CONTRACT VIOLATES DUE PROCESS AS A COGNOVIT NOTE

56.     Upon recent information and belief of Plaintiff, certain terms as contained within the Deed of Trust, are akin in performance to a cognovit note and/or confession of judgment, however, it operates far more insidiously; as, it specifically robs the (unknowing) maker of certain otherwise assured rights and remedies, including, but not limited to Due Process, and redress by appeal.

57.     Upon recent information and belief of Plaintiff, the Deed of Trust, proceeding as a cognovit note, wholly evades the requisite as otherwise mandated by the Supreme Law of the Land.

58.     Plaintiff, avers that, prior to, during and up to recent event, Plaintiff had no knowledge whatsoever as to particular terms contained within the Deed of Trust, which, Plaintiff only recently learned, contains small and somewhat hidden and/or improperly disguised provisions, that caused said Deed of Trust to operate as a Cognovit note, to the sole detriment and subsequent depravation of Plaintiff and her property.

59.     Plaintiff was never informed that prior to the hastily executed fifteen (15) page Deed, that Plaintiff was already lawfully "seised" of the subject property, and what that term meant.  Nor was plaintiff informed as to the contents of said Deed, particularly as relative to "irrevocably" waiving Plaintiff's Due Process rights.

60. Specifically, Defendants (by and through defendant John and/or Jane Doe representatives, acting on behalf of Defendant First Magnus Financial) furthered their concealment to the deprivation and subsequent abrogation of Plaintiff's rights, by directing Plaintiff away from such terms as seised, irrevocably and power of sale, whch were hidden within.

61. Plaintiff believes and therefore avers, that Defendants John and/or Jane Doe, acting directly on behalf of First Magnus Financial, as further inured to and for the sole benefit of all other named Defendants, willfully and intentionally concealed the aforesaid terms and/or clauses(s) for the expressed purpose of depriving an otherwise unknowing Plaintiff of her fundamental rights to Due Process, by unconscionable means.

62. Plaintiff avers, the hidden terms couched within the Deed of Trust, creates a cognovit note/confession of judgment, irrevocably granted, does just that; it creates conditions that are in violation of both the United States Constitutions, and well-settled supreme law of the land and the Arizona Constitution.

63. WHAT IS A COGNOVIT NOTE? A Cognovit note is not an oridinary note. It is indeed an extraordinary note, which, authorizes an attorney, and/or authorized representative to confess judgment against the person or persons signing it. It is written authority of the debtor and a direction by him or her for the entry of a judgment against debtor, if the obligation set forth in the note is not paid when due.

64. Such a judgment (of confession) may be taken by any person or any company holding the note, only if specifically and diligently pointed out and discussed as to the legal ramifications in so doing; for it cuts off every defense which the make of the note might otherwise possess. It likewise cuts off all rights of appeal from any judgment taken on it.

65.     According to the United States Supreme Court, "a cognovit note is the ancient legal device by which the debtor consents in advance to the holder's obtaining a judgment without notice or hearing, and possibly even with the appearance, on the debtor's behalf, of an attorney by the debtor."

66.     Justice Blackmum, expressing the unanimous view of the court in _Overmyer V. Frick_, 405 U.S. 174, 92 S.Ct. 775, L.Ed.2d 124 (1972), stated the criteria for establishing constitutionality of a Cognovit Note is not determine upon the theory of the note <u>but the method used by both parties to afford each other due process</u> protection afforded by the Fourteenth Amendment. (emphasis added).

67.     Judge Blackmum stated, "...[i]t was held that (1) a cognovit clause was not, per se violative of the Fourteenth Amendment due process requirements as to prejudment notice and hearing, and (2) under the facts in the instant case, (**_Overmyer_**)due process was not violated by the entry of the confessed judgment, since the record established that <u>the debtor had knowingly and voluntarily waived its rights to notice and hearing, with full awareness of the legal consequences,</u> by executing the cognovit note, which was <u>supported by consideration</u> from the creditor, and which had resulted <u>from negotiations between the parties of equal bargaining power,...</u>" **Id** (emphasis added)

68.     Justice Douglas, joined by Justice Marshall concurring, stated, in effect that, (1) <u>the record must establish that a clear and unmistakable, voluntarily and intelligently valid waiver of the debtor's constitutional rights</u>, (2)... a trial judge was required to vacate a judgment obtained through a cognovit clause when presented sufficient evidence of an affirmative defense to pose a jury question, a preponderance of evidence burden not being imposed, and (3) and, the preponderance of the evidence in the (present) case does not support even a conclusionary finding that Plaintiff was even aware of the existence of any cognovit

note, let alone intentionally, deliberately, knowingly and intelligently waive her due process rights.

69.     Justice Douglas, further observed, "Debtors receive the benefit of credit at a lower rate of interest than they would receive if they did not give the creditor the right to confess judgment against them. Nevertheless, <u>the right to be heard in court is central to our system of justice, and, as with other constitutional rights, there is no presumption of waiver.</u> ***Overmyer,*** 405, U.S. 174, 31 L. 2d 124, 92S.Ct. 775 (1972) and its companion case, ***Swarb v. Lennox,*** 405 U.S. 191, 31 L. ed.2d 138, 92 S. Ct. 767 (1972) and at 186, 188._(emphasis added)

70.     Based upon the Defendants' lack of credible evidence and/or proof that Plaintiff ever waived or was ever advised of her legal detriment upon the signing of what must be characterized, at best, as a hidden cognovit clause, is just preposterous and is sufficient to warrant presentation to a jury.

## D. DEED OF CONTRACT VIOLATES DUE PROCESS AS A CONTRACT OF ADHESION

71.     In order to help determine the validity of the cognovit note and/or confession of judgment before this Court, one must concede that the mentioned contract containing the hidden clause, which was never explained to the Plaintiff, i.e., she was never aware of waiving her fourteenth amendment rights through a contract of adhesion (illegal and/or void contract) or the product of disparity in the parties' bargaining power.

72.     A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it" ***(Armendariz v. Foundation Health***

Case 2:09-ap-01358-RK    SUPPLEMENTAL COMPLAINT Doc 15    Filed 01/04/10    Entered 01/05/10 18:59:07    Desc
Main Document      Page 16 of 26

01/05/2010

*Psychcare Serv.,* 24 Cal 4th 83 at 113 (2000); *reflected in Martinez v. Master Protection Corp.,* 118 Cal. App. 4th 107; 2004 Cal. App. LEXIS 638 (2004)-- is not unconscionable merely because of disparity of the parties' bargaining position *(Gilmer v. Interstate/Johnson Lane Corp.,* 500 US 20; 114 L. Ed. 2d 26, 111 St. Ct. 1647 (1991).

73. The procedural unconscionability must co-exist with substantive components that include harsh or one-sided results that "shock the conscience". *Soltani v. West. & So. Life Ins. Co.,* 258 F.3d 1038 (9th Cir. 2001); *Ferguson v. Countrywide Credit Industries, Inc.,* 298 F.3d 778; 2002 U.S. App. LEXIS 14739 (9th Cir. 2002); *Circuit City Stores, Inc. v. Mantor,* 335 F.3d 1101; 2003 U.S. App. LEXIS 14607 (9th Cir. 2003).

74. Most contracts of adhesion are either procedurally and/or substantively unconscionable and, the unconscionability factor alone, should void the cognovit clause of this or any adhesion contract.

75. When a party to a contract possesses far greater bargaining power (Defendant and/or any creditor) than another party (Plaintiff), or when the stronger party pressures, harasses, or compels another party into entering into a contract, "oppression and, therefore, procedural unconscionability, are present." *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, at 1172 (9th Cir. 2003) (quoting) *Ferguson v. Countrywide Credit Indus., Inc.,* 298 F.3d 778 (9th Cir. 2002); *Kinney v United HealthCare Services, Inc.,* 70 Cal App 4th 1322 (1999).

76. Substantive unconscionability addresses the fairness of the term in dispute. It traditionally involves contract terms that are so one-sided as to "shock the conscience," or impose harsh or oppressive terms. Historically, courts looked to the common law for discerning the existence of substantive unconscionability as in *Rakoff, Contracts of Adhesion: An Essay in Reconstruction, 96 Harv. L.Rev. 1173, 1179-1180 (1983); Slawson,* Mass

Case 09-ap-01358-PTR Doc 15   Filed 01/04/10   Entered 01/05/10 16:59:df26   Desc
SUPPLEMENTAL COMPLAINT Docs 15
Main Document     Page 17 of 26

01/05/2010

**Contracts: Lawful Fraud in California.** *48 S. Cal. L. Rev. 1, 12-13 (1974); K. Llewellyn, The Common Law Tradition 370-371 (1960).*

77. "The common law, recognizing that standardized form contracts account for a significant portion of all commercial agreements...subjects terms in contracts of adhesion to scrutiny for reasonableness." (citation omitted)

78. Judge J. Skelly Wright set out the state of the law succinctly in ***Williams v. Walker- Thomas Furniture Co.,*** 121 U. S. App. D. C. 315, 319-320, 350 F. 2d 445, 449-450 (1965) (footnotes omitted):

79. "Ordinarily, one who signs an agreement without full knowledge of its terms might be held to assume the risk that he has entered a one-sided bargain. But when a party of little bargaining power, and hence little real choice, signs a commercially unreasonable contract with little or no knowledge of its terms, it is hardly likely that his consent, or even an objective manifestation of his consent, was ever given to all of the terms. In such a case the usual rule that the terms of the agreement are not to be questioned should be abandoned and the court should consider whether the terms of the contract are so unfair that enforcement should be withheld."

80. Plaintiff, being a least susceptible consumer acted in good faith and under a fiduciary relationship where the officers of the bank, the officers of the title company, notary, an administrative officer of the state would be participating in the closing not under fraud, deception and in direct violation of Plaintiff's constitutional rights to due process.

81. Plaintiff is aware that in a civil proceeding, acquiescence in the loss of fundamental rights will not be presumed, and, that the rights to due process in a civil judgment are subject to waiver.

82.     Plaintiff emphatically states that the Deed of Trust/cognovit note/contract of adhesion was a take it or leave it offer and the cognovit clause was never an issue raised by the Defendant Suisse and/or their representatives, Defendant(s) John Doe during the signing ceremonies.

83.     Based upon the Plaintiff's recent extensive study of cognovit notes for this matter; this (1) contract was never open to any negotiations, for it was a contract of adhesion, as the parties were not parties of equal bargaining power; (2) the Defendant First Magnus Financial never gave the Plaintiff any quid pro quo or other extra consideration in order to obtain any confession of judgment (cognovit note) clause, nor was the cognovit issued under any other substantial benefit and/or consideration including and not limited to a reduction in installment payments or reduction in interest rates; (3) there was no contention or acknowledgment that the Plaintiff was aware of the legal (detrimental) consequences of the cognovit provision; (4)

84.     This Court should vacate this prejudgment (confession of judgment/cognovit note) as a matter of law for showing that Plaintiff's natural Rights to due process were violated.

85.     The clear lack of evidence that Plaintiff ever intentionally, deliberately, and/or knowingly waived her due process rights is further supported by this very Complaint. **Natural rights cannot be waived even if that is the intent of the Plaintiff.**

86.     At all times material to this Complaint Plaintiff never waived her constitutional rights to a trial by jury under any circumstances, much less willingly, knowingly, or intentionally.

87.     The United States Supreme Court and the great majority of State Supreme Courts have all adopted the concept as; States that use cognovit procedure were found

unconstitutional, unless, the debtor knowingly and understandingly consented to the authorization to confess judgment

88.    In *__National Equipment Rental, Ltd. v. Szukent,__* 375, U.S. 311 (1962), the Court observed: "It is settled …that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether." *__Id.,__* at 315-316.

89.    And, in *__Boddie v. Connecticut,__* supra, the Court acknowledges that "the hearing required by due process is subject to waiver." 401 U.S., at 378-379, In another case on point is from New Jersey when the Chief Justice described in a rather condescending tone, "a cognovit note is the loosest way of binding a man's property that was devised in any civilized country." *__Alderman v. Diament,__* N.J. L. 197, 198.

90.    The Supreme Court clarified another part of cognovit note when the Court stated "we do not presume acquiescence in the loss of fundamental rights, *__Ohio Bell Tel., Co. v. Public Utilities Comm'n,__* 301 U.S. 292, 307 (1937), that standard was fully satisfied here."

91.    The United States Supreme Court makes it very clear that any one may waive their due process rights and/or any other right but in order to do so, one must intentionally, knowingly, deliberately, and voluntarily do so

92.    The consequences or legal detriment to waiving one's Rights must be based only upon an intelligent decision having been presented with the consequences of entering into a agreement having a cognovit clause, (note and/or confession of judgment clause).

**93.**    Because a cognovit note deprives the debtor knowledge and of notice that his or her property is being seized, without recourse, or, without benefit of hearing or appeal, courts demand "**clear and convincing evidence**" that the written waiver is "**voluntary, knowing,**

Case 2:00-ap-01358-RTB   Doc 66   Filed 01/04/10   Entered 01/05/10 12:52:06   Desc
SUPPLEMENTAL COMPLAINT Doc 66
Main Document    Page 20 of 26

01/05/2010

**and intelligently made.**" the question of waiver is factual not presumptive. This, a jury must decide.

94. Defendant First Magnus by and through their acting representatives, Defendants' John and/or Jane Doe(s), cannot substantiate and/or otherwise support their position that Plaintiff did voluntarily waive her due process rights. The Deed speaks for itself; there was never any warning paragraph, bold letters, bold sentences and/or no warning statement to merit any concern on behalf of the Plaintiff.

95. At minimum, to guarantee this basic constitutional question, which is now before this court, Defendant Suisse and/or Defendants' John and/or Jane Doe(s), acting as representatives of Defendant Suisse, should have had a warning boldly displayed as to dispel any ambiguity as to whether Plaintiff received full and adequate warning of the fundamental rights she was about to (unknowingly) waive. The following warning serves as an example:

**"WARNING –By signing this paper you give up your right to notice and court trial. If you do not pay on time a court judgment may be taken against you without your knowledge and the powers of a court can be used to collect from you or your employer regardless of any claims you may have against the creditor whether for returned goods, faulty goods, failure on his part to comply with the agreement, or any other cause."**

Case 2:09-ap-01358-RTB Doc 15 Filed 01/04/10 Entered 01/05/10 18:59:19 Desc
SUPPLEMENTAL COMPLAINT Doc 15    Main Document    Page 21 of 26    Page 21 of 26

01/05/2010

**96.** Plaintiff once again reiterates that she was never made aware of any cognovit note and/or confession of judgment at the time of her entering into the contract with First Magnus and/or their representatives, Defendants' John and/or Jane Doe(s), or that, plaintiff ever knowingly, or intentionally waived any of her constitutionally-guaranteed rights. Defendants never spent any time on this subject with Plaintiff, but instead, quickly raced through the closing process, shuffling "papers" in front of Plaintiff to sign, as a take it leave it offer, without any explanation as to the contents thereof, other than where to sign.

**97.** Plaintiff moves this Court to vacate the illegally obtained cognovit note/ adhesion contract and protect Plaintiff's due process Rights from further willful deprivations by Defendants.

**98.** This Court must hear the constitutional questions as a matter of law and Public Policy and have a jury to determine due process violations as questions of fact.

**99.** For the convenience of the court, Plaintiff lists the Counts as listed in the SUPPLEMENTAL COMPLAINT:

**Count 1**-Fraud
**Count II**-Breach of Contract/Agreement
**Count III**-Violation of the Arizona Consumer Fraud Act
**Count IV**-Violation of Truth In Lending Act, 15U.S.C. § 1601 *et seq*
**Count V**-Unlawful Conversion
**Count VI**-Negligence
**Count VII**-Accounting/Breach of Fiduciary Duty
**Count VIII**-Unjust Enrichment
**Count IX**-Specific Performance
**Count X**-Violation of the Fair Debt Collection Practices Act
**Count XI**-Violation of Arizona Assignment and Satisfaction of Mortgage Law and Invalid Deed of Trust
**Count XII**-Intentional Infliction of Emotional Distress
**Count XIII**-Fraud-Misrepresentation and Conspiracy
**Count XIV**-Conversion/Civil Theft
**Count XV**-Violation of the Uniform Commercial Code as Defined in ARS §47-3100, et. al. and Arizona's Recording Statute
**Count XVI**-Temporary Restraining Order, Preliminary and Permanent Injunction

Case 2:09-ap-01358-RTB    Doc 15    Filed 01/04/10    Entered 01/05/10 18:52:00    Desc
SUPPLEMENTAL COMPLAINT-ALS-BR
Main Document    Page 22 of 26

01/05/2010

Additional Supplemental Counts added in this Supplemental complaint:

## Count XVII

### Request for Declaratory Relief

**100.** Plaintiff incorporates by reference all points and authorities in the Original Complaint and repeats, re-alleges and incorporates by reference the foregoing paragraphs

101. Pursuant to the Declaratory Judgment Act, this Honorable Court may enter a Declaratory Judgment, determining the rights of the Plaintiff with regards to the various defendants', as it relates to the Original Promissory Note, Deed of Trust, and any and all subsequent documents, correspondence, and alike, relative to the claims as presented herein.

102. The primary purpose of a Declaratory Judgment is to quickly determine the issues, which if delayed, will, as in the instant matter, cause substantive injury to the Plaintiff, due to the direct and continuing actions of Defendants', and accordingly, afford relief from the actions of Defendants', and accordingly, afford relief from the uncertainty and insecurity fostered by Defendants', in determining the legal rights, status, and relations appertaining thereto.

103. A Declaratory Judgment is absolutely necessary in the present matter, as to speedily determine the rights, status, and relationship(s) between Plaintiff and Defendants', regarding the location, presentment, and, subsequent authentication of the Original Promissory Note, upon which, any authority to act under the Deed of Trust, is incidental to the essential note.

104. A Declaratory Judgment is absolutely necessary in the present matter, as it appertains the Deed of Trust, in relation to the Due Process rights of the Plaintiff, and

Defendants' application of a hidden Cognovit clause contained therein, executed without explanation, or warning, that Plaintiff's rights were being abrogated.

105. A Declaratory Judgment is necessary with regards to Privity of Contract, as Plaintiff was never properly noticed that Defendants' may assign the Promissory Note for which all action as it relates to the Deed of Trust, by necessity, must rely.

106. Delay in granting the requested Declaratory Judgment will result in additional, albeit, irreparable harm to Plaintiff, as Plaintiff having had her property unlawfully sold, will now be forced, i.e. evicted from her property should this Honorable Court fail to intervene.

107. Declaratory Judgments are proper when: (1) An actual controversy exists, (2) irreparable harm and injury is imminent and inevitable, (3) plaintiff has a direct, substantial and present interest, and (4) the declaration sought will be of practical help in ending the controversy.

108. An actual controversy exists between Plaintiff and Defendants', both individually and severally, in that Defendants' have alleged they hold and/or have held, at all material times relevant to this complaint, the original note, and had the authority to act under it.

109. An actual controversy exists as to whether Plaintiff was unknowingly stripped of her Due Process rights in execution of the Deed of Trust, performing as a cognovit note.

110. Plaintiff has a clear, direct, substantial and present interest in the controversy.

111. Plaintiff has incurred significant damage by the conduct of Defendants' and will suffer additional and irreparable harm/damage should Defendants' be allowed to continue to act, absent granting Plaintiff Declaratory Relief, with additional litigation as imminent and inevitable.

112. WHEREFORE , Plaintiff respectfully requests this Honorable Court to enter a Declaratory Judgment, declaring, *inter alia*, that the Sale of Plaintiff's property as executed on

May 7, 2009, is void, and without legal or lawful effect and, for any and all causes, as stated herein, Additionally, Plaintiff respectfully requests this Honorable Court grant Plaintiff an Evidentiary Hearing, and, any and all other relief as this Court deems just and proper.

## Count XVIII

## EMERGENCY INJUNCTIVE RELIEF

**113.** Plaintiff incorporates by reference all points and authorities in the Original Complaint and repeats, re-alleges and incorporates by reference the foregoing paragraphs.

**114.** Plaintiff's right to Injunctive Relief is clear; an injunction is absolutely necessary to avoid additional and irreparable injury to Plaintiff, which will result should this Court refuse to grant Plaintiff's request.

**115.** Exigent circumstances exist as Defendants', having unlawfully sold Plaintiff's property without Due process, are now seeking to permanently strip Plaintiff of her property, pursuant to Defendant Sheriff's physical intervention on behalf of Defendants ALS, QLS, MERS on or about January 4, 2010.

**116.** In the interests of justice, Defendants' ongoing action(s) compels the issuance of Injunctive Relief where, in the absence thereof, imminent and irreparable injury will otherwise occur, until such time, Plaintiff's Request for Declaratory Relief can be fully and justly adjudicated.

**117. WHEREFORE,** Plaintiff respectfully requests this Honorable Court to enter an order, enjoining Defendants' and/or any party from any further action against Plaintiff, including, but not limited to, setting aside (stay of) Eviction Proceedings, as currently set, Plaintiff specifically seeks this Court's determination of Plaintiff's request for Declaratory

Case 2:09-ap-01358-RTB Doc 35    Filed 01/04/10    Entered 01/05/10 18:59:12    Desc
SUPPLEMENTAL COMPLAINT-RQS-BK    Main Document    Page 25 of 26

01/05/2010

Relief following a full and proper Evidentiary Hearing. Plaintiff additionally requests any and all other relief consistent with the foregoing, that this Court deems just and proper.

DATED: This 4th Day of January 2010.

Respectfully submitted

Katherine Christensen
1134 West Grand Caymen Drive
Gilbert, Arizona 85233
Tel: (480) 813-3885
Pro Se

Case 2:09-ap-01358-RTB   Doc 15   Filed 01/04/10   Entered 01/05/10 18:59:10   Desc
SUPPLEMENTAL COMPLAINT-ALS-BK   Main Document   Page 26 of 26

01/05/2010